```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x

  MARIE VOLTAIRE,

                Plaintiff,
                                              MEMORANDUM AND ORDER
           -against-                          19-CV-3705(EK)(RER)

  NEW YORK CITY HEALTH AND
  HOSPITALS CORP.,

                Defendant.

----------------------------------------x
```

ERIC KOMITEE, United States District Judge:

       Plaintiff Marie Voltaire, a nurse employed by defendant New York City Health and Hospitals Corporation (HHC), brings this action against HHC for discrimination and retaliation in violation of the Americans with Disabilities Act and New York state law.  Because the parties dispute whether a 2018 settlement-and-release agreement that Plaintiff executed in favor of Defendant precludes the claims at issue here, the Court converted Defendant's motion to dismiss into a motion for summary judgment, in order to allow for the consideration of the release and other relevant materials.  I now conclude that the release does cover the Plaintiff's claims and therefore grant Defendant's motion for summary judgment.

**I. Background**

The following facts, set forth in the parties' submissions, are undisputed unless otherwise specified. Plaintiff was employed by HHC as a Staff Nurse at Coney Island Hospital during the period at issue in this case. *See* Amended Complaint ¶ 3, ECF No. 14 (Compl.). On January 18, 2013, Plaintiff was injured when she slipped and fell at work. *Id.* ¶ 9. The Amended Complaint ("Complaint") reports that she "sustained serious and permanent injuries to her neck, back, left shoulder and left leg"; that she underwent surgery because of these injuries; and that she has been in pain ever since. *Id.* ¶¶ 9, 12. Eight months after the accident, Plaintiff returned to work but sought what she terms a "reasonable accommodation" under the circumstances — namely, permission to stay home from work when her pain required it. *Id.* ¶¶ 10-12. Plaintiff alleges that after her surgery, her employer did not provide her with these or other accommodations. *Id.* ¶ 12. Plaintiff filed a charge of "failure to accommodate" with the Equal Employment Opportunity Commission (EEOC) in February 2016. *Id.* ¶¶ 12-13.

According to her Complaint, Defendant then asked Plaintiff to return to work and told her they would accommodate her disability. *Id.* ¶ 13. The Complaint does not specify who made this representation, what accommodation they offered, or

2

whether the offer was communicated in writing, among other things. After her return, Plaintiff was assigned to the Hospital's Emergency Department. *Id.* Plaintiff failed to report to her assignment in the Emergency Department from March 9, 2016 to May 16, 2016, apparently because she could not, or would not, perform the duties required of her.[1] On July 15, 2016, Defendant instituted disciplinary proceedings against Plaintiff.

Defendant brought this disciplinary action under "Charge Number 2015-D-0459." *See* Def's Ex. A, ECF No. 21-1 ("Disciplinary Action dated July 15, 2016").[2] This action was based on four "Specifications" of misconduct, three of which arose out of a verbal altercation between Plaintiff and a coworker in September 2015; and one of which arose out of Plaintiff's March-to-May 2016 absence. The four Specifications set out in Charge Number 2015-D-0459 were:

> Specification 1: "On or about September 20, 2015, you engaged in a threatening and loud verbal argument with

---

[1] Plaintiff alleges that the person in charge of the Emergency Department told her they "needed a nurse who could work without restrictions" and sent her home. Compl. ¶ 13. However, the contemporaneous disciplinary records state that she failed to appear because she believed the assignment did not fit her reasonable accommodation. *See* Def's Ex. B ECF No. 21-2; Def's Ex. C, ECF No. 21-3. The underlying reason for her absence does not ultimately affect the analysis of whether the resulting suspension falls within the scope of the parties' settlement agreement.

[2] This disciplinary action, including the "Specifications" of misconduct alleged thereunder, comprised one of the three actions later consolidated under the OATH Index Number referred to in the settlement agreement.

>    [a coworker], in the presence of patients and coworkers."
>
>    Specification 2: "On or about September 20, 2015, you refused a directive from the Charge Nurse and Head Nurse to take a patient admission."
>
>    Specification 3: "On or about September 20, 2015, you stated in sum and substance to [the coworker named in Specification 1], if she calls you a liar again, you will bear her up."
>
>    Specification 4: "You failed to report for duty for the period of March 9, 2016 to May 16, 2016."

*See id.* at 3.

At the initial disciplinary conference, Conference Officer Audrey Russell heard argument on all four Specifications, set forth her findings, and recommended that Plaintiff receive a 45-day suspension. *See* Def's Ex. B at 3, ECF No. 21-2 ("Step 1(a) Recommendation"). Next, the Plaintiff's union (the New York State Nurses' Association) appealed Conference Officer Russell's recommendation on behalf of Plaintiff through the Step II grievance process. Following another conference and review of the record, the Step II Review Officer concluded that the "preponderance of the credible evidence proves [Plaintiff] culpable of the charged conduct" and determined that the recommended 45-day suspension was appropriate. *See* Def's Ex. C at 2-3, ECF No. 21-3 ("Step II Decision").

4

Plaintiff served the 45-day suspension in 2017, following the Step II decision. Plaintiff reports that she was suspended without pay from May 8, 2017 to June 21, 2017. During this suspension period, Plaintiff took two actions.

On June 14, 2017, she filed an "Intake Questionnaire" with the EEOC challenging the 45-day suspension.[3] *See* Pl's Ex. 1, ECF No. 22-1 ("EEOC Intake Form"). On the intake form, Plaintiff checked a box stating that, "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above." *Id.* at 5. Plaintiff's charge was not filed with the EEOC until July 10, 2018, approximately one year later. *See* Coyne Decl., Ex. 1, ECF No. 17-3 (sworn charge dated July 10, 2018); *see also* Pl's Ex. 2, ECF No. 22-2 (unsworn copy of EEOC charge dated June 6, 2018).

Plaintiff also appealed the Step II decision to the city's Office of Administrative Trials and Hearings (OATH) pursuant to Section 7.5 of the New York City Health and Hospitals Corporation Personnel Rules and Regulations. *See* Def's Ex. 4, ECF No. 21-4 ("OATH Appeal"). On June 1, 2017, while the OATH appeal was pending, Defendant revised the original disciplinary action dated July 15, 2016 (Charge Number

---

[3] Plaintiff contends that this document functions as the required EEOC charge for timeliness purposes, and that it was filed within 300 days of the allegedly unlawful employment practice, rendering this action timely.

5

2015-D-0459) to withdraw Specification 4 — the Specification alleging that Plaintiff had failed to report for duty.  *See* Def's Supp. Br. at 2, ECF No. 21.  The revised version of Charge Number 2015-D-0459 thus included only Specifications 1 through 3, which alleged that Plaintiff engaged in a loud and threatening argument in front of patients; refused a directive to take a patient admission; and threatened to beat up a coworker.  *See* Coyne Decl. Ex. 4 at 9, ECF No. 17-6 ("OATH Order").

Finally, on June 14, 2018, OATH sent a letter to Plaintiff notifying her that a pre-trial conference would take place on August 27, 2018, concerning her appeal of the March 2017 Step II Decision affirming her suspension.  *See id*. at 1-2.  Also pending before OATH were Plaintiff's appeals of two other disciplinary decisions that resulted from separate proceedings against her:  one from 2015 under Charge Number 2014-D-0369, based on nine Specifications of misconduct that occurred in 2014, *id.* at 5; and another from 2018 under Charge Number 2018-D-0017, based on seven Specifications of misconduct that occurred the same year*, id.* at 12.  Plaintiff's pending appeals of the disciplinary decisions in all three of these actions — Charge Numbers 2015-D-0459, 2014-D-0369, and 2018-D-0017 — were consolidated under "OATH Index Number 182749."  *Id.* at 1.

6

Following the first OATH conference, Plaintiff entered into the settlement-and-release agreement to resolve OATH Index Number 182749. Under the terms of the settlement, Plaintiff agreed to accept the disciplinary penalty of 60-days' suspension for all three disciplinary actions. *See* Coyne Decl., Ex. 3 at 1, ECF No. 17-5 ("Settlement Agreement"). The 60-days' suspension was deemed to have already been served, so no additional suspension would result from the settlement. *See id*. Plaintiff further agreed to release Defendant from "any and all claims . . . in connection with the facts forming the basis of the underlying dispute raised under OATH Index Number 182749" — the consolidated appeal's docket number. *Id.* at 2. In return, the settlement agreement provided that Plaintiff would receive back pay for the period from June 7, 2017 to June 21, 2017. *Id.* at 1.

Plaintiff commenced this action nearly one year later, alleging that Defendant discriminated against her based on her disability and retaliated against her for seeking reasonable accommodations and filing the failure-to-accommodate charge with the EEOC in 2016. The only specific adverse employment action alleged is Plaintiff's 45-day suspension in 2017.[4] Before the

---

[4] Plaintiff's 45-day suspension in 2017 is the only adverse employment action identified in her Complaint and motion papers. To the extent that the Complaint purports to allege any other instances of discriminatory or

7

Court is Defendant's motion for summary judgment pursuant to Federal Rule 56 on the following grounds: (1) Plaintiff's ADA claims are time-barred because she filed the operative EEOC charge on July 10, 2018 (not June 14, 2017, the date when she filed the Intake Questionnaire); and (2) all of Plaintiff's claims are barred by the settlement-and-release agreement between the parties.

## II. Legal Standards

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact" and that he "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "can affect the outcome under the applicable substantive law." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). A genuine dispute is one that can "reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In

---

retaliatory conduct by Defendant, it must be dismissed for failure to state a claim pursuant to Defendant's motion to dismiss under Rule 12(b)(6). The Complaint vaguely alleges that Defendant has "continued" to engage in unlawful conduct through "disciplinary warnings, counseling, [and] other discriminatory and retaliatory actions," *id.* ¶ 15, but Plaintiff does not set forth any factual content regarding another adverse employment action aside from her 45-day suspension. Conclusory statements about discriminatory and retaliatory conduct such as these cannot sustain a claim for relief. *See, e.g., Ortiz v. City of New York*, No. 12-CV-3118, 2012 WL 6200397, at *5 (S.D.N.Y. Dec. 12, 2012) ("For a retaliation claim to survive a motion to dismiss, it must be supported by specific and detailed factual allegations, not stated in wholly conclusory terms."); *see also Jones v. Target Corp.*, No. 15-CV-4672, 2016 WL 50779, at *9 (E.D.N.Y. Jan. 4, 2016) (finding that complaint failed to state a claim for retaliation in violation of the ADA where, among other issues, the complaint "fail[ed] to identify any facts regarding when the alleged events and adverse actions occurred").

8

performing this analysis, the Court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). "If, in this generous light, a material issue is found to exist, summary judgment is improper." *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n*, 182 F.3d 157, 160 (2d Cir. 1999).

The moving party may establish that there is no genuine dispute "by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo*, 22 F.3d at 1223-24 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the moving party meets this burden, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998). Summary judgment must be granted if "no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal quotations omitted).

### III. Discussion

Defendant first argues that Plaintiff's ADA claims are time-barred because she filed the operative EEOC charge on July 10, 2018, which was more than 300 days after her 45-day

9

suspension in 2017;[5] Plaintiff counters that her Intake Questionnaire constitutes a charge for timeliness purposes.[6]  The Court need not reach this question because, even assuming that her Intake Questionnaire constitutes a timely-filed EEOC charge, her claims are barred by the settlement and release.

As previewed above, Defendant argues that Plaintiff's claim regarding her 45-day suspension in 2017 — the only adverse employment action specifically identified in her Complaint — is barred by the settlement-and-release agreement between the parties.  Settlements and releases are construed according to general principles of contract law.  *See, e.g., Tromp v. City of New York*, 465 F. App'x 50, 51 (2d Cir. 2012).  "Under New York law, a release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced."  *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 463 (2d Cir. 1998).  The construction of an unambiguous contract is a matter of law and may properly support summary judgment.  *See,*

---

[5] The ADA incorporates the enforcement provisions of Title VII, including 42 U.S.C. § 2000e-5, which requires — as relevant here — the filing of a charge with the EEOC within 300 days of the allegedly unlawful employment practice as a prerequisite to any private action.  *See* 42 U.S.C. § 12117(a).

[6] Some courts have found that a plaintiff's ADA claims were timely when the Intake Questionnaire described the alleged discrimination in adequate detail and unambiguously authorized the EEOC to investigate the matter.  *See, e.g., Acheampong v. New York City Health and Hosps. Corp.*, No. 11-CV-9205, 2015 WL 1333242, at *7 (S.D.N.Y. Mar. 25, 2015).

*e.g.*, *Roberts v. Doe 1*, No. 14-CV-9174, 2015 WL 670180, at \*4-\*7 (S.D.N.Y. Feb. 17, 2015).

As set forth above, Plaintiff executed the Settlement Agreement with Defendant on August 27, 2018, after appealing the disciplinary determination that led to her 45-day suspension to OATH, together with two other disciplinary decisions. All three disciplinary actions were consolidated on appeal under a single "Index Number" as part of the OATH proceedings. As discussed above, in the Settlement Agreement, Plaintiff agreed to release Defendant from "any and all claims . . . in connection with the facts forming the basis of the underlying dispute raised under OATH Index Number 182749." Accordingly, if Plaintiff's 45-day suspension falls within the scope of OATH Index Number 182749, any claim regarding the suspension is barred by the settlement.

The parties diverge on the question of what conduct served as the catalyst for the 45-day suspension. Plaintiff contends that the suspension arose from the Defendant's allegation that she "abandon[ed] her job" — i.e., that she failed to report for work for the March-to-May 2016 period noted above. Compl. ¶ 13. This contention is important to Plaintiff's claim because Defendant later agreed to drop the failure-to-report charge from the disciplinary proceedings before the parties executed the settlement and release at issue. Thus, Plaintiff argues, she never released Defendant from the

11

dispute over her absence; and the 45-day suspension flowed from the disciplinary charges in response to that absence. *See* Pl's Supp. Br. at 2, ECF No. 22 (Plaintiff asserts that she "served the 45 days suspension separately and apart from the charges which formed the subject of the Stipulation").

Plaintiff's argument assumes that her absence formed the sole basis for her 45-day suspension, and that the removal of this allegation from the consolidated OATH appeal necessarily withdrew the 45-day suspension from review as well. The record demonstrates, however, that Plaintiff's contention is inaccurate. To see why, one must look only to the "Step 1(a) Recommendation" issued by Conference Officer Russell, which sets out the "findings" pursuant to which Officer Russell imposed the 45-day sentence. *See* Step 1(a) Recommendation at 2. These findings make no mention of the 2016 "failure to report for duty" underlying Specification 4 — despite the fact that Specification 4 had not, at that point, yet been withdrawn. Instead, Officer Russell's "Findings" focus entirely on Plaintiff's "blatant[] disregard[]" of a directive from the Head Nurse to take patient admission; "complete disregard[]" for patient care; "lack of emotion" toward patients and colleagues; her "verbal threat to beat up" a colleague; and "disrespect[]" to her supervisor. The Conference Officer concluded that Plaintiff's actions "lacked compassion" and that she "should be

12

held accountable" — namely, by the recommended 45-day suspension. *See id.* The Conference Officer's findings did not mention the absence set out in Specification 4 at all.

In affirming the Step 1(a) recommendation, Review Officer Damon Levenstien agreed that the record established Plaintiff had a "heated verbal exchange" with her coworker and that it was reasonable to construe her language as a "threat of physical violence." *See* Step II Decision at 2. He also considered the absence set out in Specification 4 and found that, notwithstanding Plaintiff's contention that she did not appear because the assignment "did not fit her reasonable accommodation," it was "incumbent on [Plaintiff] to go to her assignment and deal with it through the appropriate channels." *Id.* Although Review Officer Levenstien relied, in part, on the evidence underlying Specification 4, his affirmation of the Step 1(a) recommendation was based on his review of the record "in its entirety." *Id.* He concluded that the preponderance of the evidence supported Plaintiff's culpability and that a 45-day suspension was an appropriate penalty. *Id.* at 2-3.

Defendant dropped Specification 4 from Charge Number 2015-D-0459 on June 1, 2017, after Plaintiff elected to appeal her suspension to OATH but prior to the June 14, 2018 notice informing Plaintiff that her pending appeals would be the subject of an OATH pre-trial conference. However, Defendant

13

indisputably continued to *pursue* the affirmation of the 45-day suspension at the OATH level. This is evidenced by the fact that Charge Number 2015-D-0459 — the basis for Plaintiff's 45-day suspension — was consolidated with other disciplinary actions on appeal and proceeded to a pre-trial conference even after Specification 4 was withdrawn, and would have proceeded to trial if not settled. *See* OATH Order at 1 (notifying Plaintiff of an upcoming pre-trial conference regarding three sets of charges that included the original and revised versions of Charge Number 2015-D-0459). All disciplinary actions that were the subject of the pre-trial conference were then settled.

Therefore, when Plaintiff agreed to release Defendant from "any and all claims or rights of action . . . which they may now have, which they may have had heretofore, or which they may have in the future in connection with . . . Index Number 182749," Settlement Agreement at 2, this release plainly extended to any claim that the 45-day suspension was discriminatory or retaliatory. Plaintiff's 45-day suspension was never, itself, a "charge," as Plaintiff suggests. *See* Pl's Opp. at 5, ECF No. 17-7 (referring to the suspension as "among the initial charges brought against" her). Instead, the suspension was a disciplinary action that constituted the *outcome* of underlying charges. That disciplinary action was

14

clearly a subject — indeed, a central one — of Plaintiff's OATH appeal and final settlement agreement.[7]

Defendant has presented documentation sufficient to establish that the Settlement Agreement released Defendant of any claim arising out of her 45-day suspension. Plaintiff, conversely, has presented no evidence to call the Settlement Agreement's validity into question or to support a different interpretation of its terms. Accordingly, there is no genuine issue of material fact that Plaintiff's claim with respect to her 45-day suspension is barred by the operative settlement. *See Roberts*, 2015 WL 670180, at *7.

---

[7] The Settlement Agreement also provided Plaintiff with backpay for a 14-day period in June 2017, when, according to Plaintiff's EEOC charge, she was serving the very 45-day suspension that is at issue. That this period is expressly covered by the settlement provides further proof that the 45-day suspension is within the scope of the Settlement Agreement.

15

**IV. Conclusion**

For the reasons set forth above, Defendant's motion for summary judgment is granted, and Plaintiff's Amended Complaint is dismissed in its entirety. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

                                        /s/ Eric Komitee
                                        ERIC KOMITEE
                                        United States District Judge

Dated:    February 12, 2021
                Brooklyn, New York